UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORI A. TREMBLAY,

                         Plaintiff,              12-CV-0379(MAT)

            v.                                   **DECISION**
                                                 **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                         Defendant.

---

## INTRODUCTION

     Plaintiff Lori A. Tremblay ("Plaintiff"), who is represented
by counsel, brings this action pursuant to the Social Security Act
("the Act"), seeking review of the final decision of the
Commissioner of Social Security ("the Commissioner") denying her
application for Supplemental Security Income ("SSI"). This Court
has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g),
1383(c).

     Presently before the Court are the parties' motions for
judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure. Dkt.##8, 11. Plaintiff alleges that the
decision of the Administrative Law Judge ("ALJ") who heard her case
is erroneous because it is not supported by substantial evidence
contained in the record, or is legally deficient and therefore she
is entitled to judgment on the pleadings. Pl. Mem. (Dkt.#8-1) 8-18.

---

     [1] Carolyn M. Colvin is automatically substituted for the
previously named Defendant Michael Astrue pursuant to
Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend
the caption accordingly.

The Commissioner cross-moves for judgment on the pleadings on the grounds that the ALJ's decision is correct, is supported by substantial evidence, and was made in accordance with applicable law. Comm'r Mem. (Dkt.#11-1) 11-23.

**BACKGROUND**

Plaintiff applied for SSI benefits on July 11, 2008, alleging disability on the basis of anxiety disorder. She received a Notice of Disapproved Claim on September 4, 2008. T. 78-81, 125. She then requested an administrative hearing, which was held on August 20, 2010, before ALJ Robert C. Harvey. T. 41.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found at step one that Plaintiff did not engage in substantial gainful activity since the date of her SSI application. T. 26. At step two, he found that Plaintiff's anxiety, depression, and panic disorder with agoraphobia were severe impairments. Id. Next, the ALJ found that Plaintiff's impairments did not meet or equal the Listings set forth at 20 C.F.R. Part 404, Subpart P, Appx. 1. Id. Because Plaintiff could not be found disabled at the third step, the ALJ proceeded to determine that Plaintiff retained the residual functional capacity ("RFC") to lift/carry/push/pull 100 pounds occasionally and 50 pounds frequently; stand and/or walk

for six hours per workday; and sit for two hours per workday. T. 44-45. He further found that Plaintiff could not climb ropes, ladders, or scaffolds; work in unprotected heights; or work around heavy, moving, or dangerous machinery. Id. Given her mental impairments, the ALJ found that plaintiff had a moderate limitation in the ability to understand, remember, and carry out detailed instructions; interact appropriately with the general public; and respond appropriately to changes in a work setting; and could only perform work that entailed no more than a moderate amount of stress. T. 45.

Plaintiff had no past relevant work, so the ALJ proceeded to step five of the sequential evaluation process. T. 47-48. Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, including cleaner and dining room attendant. T. 48-49. He concluded that Plaintiff was not disabled. T. 49.

Following the ALJ's unfavorable determination, Plaintiff requested review by the Appeals Council on December 7, 2011. On April 2, 2012, the Appeals Council denied review, making the ALJ's determination the final decision of the Commissioner. T. 1-6, 20, 178-81. This timely action followed. Dkt.#1.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

**DISCUSSION**

## I.   **General Legal Principles**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits

-Page 4-

the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. **Medical Evidence**

### A. **Treating Sources**

Since 1996, Plaintiff sought counseling for depression, anxiety, and other mental health issues. T. 189-210. From June, 2005, through July, 2010, Plaintiff was treated at the Buffalo Psychiatric Center for panic attacks and anxiety. T. 245-277. On several occasions, Plaintiff reported that her symptoms were under control, and her providers noted that her mood was stable. T. 245,

264, 267, 269, 313, 314. Her social worker noted that she coped well with her symptoms of agoraphobia and panic, but had difficulty in leaving the house. T. 277. Plaintiff reported that she watched her son and occasionally helped with her infant grandchildren, grocery shopped (unless she had an attack), and cleaned. T. 251, 253, 262, 264.

In April, 2008, she presented with depression and anxiety, and told the social worker that she recently was granted an order of protection against an ex-boyfriend who had been calling her as many as 60 times per day. T. 272. In November, 2008, Plaintiff reported feeling depressed and requested an increase in Lexapro on the basis that other anti-depressants did not help or had various side effects. T. 316. One month later Plaintiff indicated that the increased dosage did help, and had been coping well with her family issues. She reported no side effects from her medications. T. 315.

By February, 2009, Plaintiff was still reporting anxiety attacks and her condition essentially remained unchanged. T. 313. Plaintiff's mood was again observed as stable. Id. Treatment notes from March and April reveal similar statements, with minor changes in her medication. T. 310. Though Plaintiff still had anxiety and agoraphobia, she was not significantly depressed. T. 310-12. On June 3, 2009, Plaintiff reported that the medication Buspar had helped with her anxiety and had no side effects. T. 307. In October, 2009, Plaintiff's mood was pleasant and affect was

brighter. She was given coping mechanisms to help with her family issues. T. 301.

In December, 2009 and January, 2010, Plaintiff continued to describe panic, anxiety, difficulty sleeping, and struggling to raise her young child. Coping mechanisms were discussed, and support counseling was provided. T. 357-59, 363. In March, 2010, she reported high levels of anxiety, but did not report any impairment and did not appear to be in distress. T. 360.

### B. Consultative Examinations

A consultative examination performed by Susan Santarpia, Ph.D. on June 14, 2010, indicates that Plaintiff had panic disorder with agoraphobia and anxiety disorder, not otherwise specified. T. 327. Dr. Santarpia noted that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks within normal limits, with mild impairments in performing complex tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. T. 326-27. Plaintiff demonstrated fair insight and judgment, with an overall prognosis of fair. Id. Dr. Santarpia opined that the evaluation results were consistent with psychiatric problems, but which were not significant enough to interfere with Plaintiff's daily functioning. T. 327.

III. **Non-Medical Evidence**

At the time of her hearing, Plaintiff was 43 years-old, had two children, and had obtained a GED education. T. 57.

Plaintiff testified that she had problems with depression, anxiety, and panic attacks with agoraphobia, and told the ALJ that she had panic attacks three times a week, sometimes brought on by stress and sometimes for no reason at all. T. 58-59. She testified that her symptoms included feeling unable to breathe and like she would pass out or die if she did not leave the place in which she was located. Id. With regard to her depression, Plaintiff stated that she felt constant sadness. Id. She described being uncomfortable, "panicky," easily stressed, and having difficulty with her concentration and memory. T. 61-62.

Plaintiff's medications included Trazadone for sleep, Buspar for anxiety, and Wellbutrin. T. 63. The side effects from Wellbutrin were racing thoughts and dizziness and that they occurred daily. T. 63-64. Although she could perform a number of household chores, Plaintiff could not do yard work, engage in hobbies, go to church, visit friends, or drive a car. T. 64-65. Plaintiff testified that her doctor told her that she could not work. T. 69.

The ALJ also heard testimony from VE Timothy Janikowski, Ph.D. T. 70-75. He posed to the VE a hypothetical involving an individual with no past relevant work that could lift or carry, push or pull

100 pounds occasionally and 50 pounds frequently; could sit for 2 hours in an 8-hour work day, and stand or walk 6 hours in an 8-hour day. The hypothetical individual would have moderate limitations in the ability to understand, remember, and carry out detailed instructions; interact with the general public; respond to changes in a job setting; and could only perform jobs involving a moderate amount of stress. T. 72-73. The VE responded that such an individual could perform unskilled work, such as industrial cleaner and dining room attendant. T. 73. The ALJ then asked the VE to assume that Plaintiff's testimony that she had panic attacks with agoraphobia three times per week was given full credibility. T. 74. The VE responded that such an individual could not perform any jobs that exist in significant numbers in the national economy. T. 75.

## IV. **The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.**

### A. **Mental RFC Finding**

Plaintiff first contends that the ALJ improperly substituted his own medical opinion in finding that Plaintiff only had mild mental impairments that were controlled with medication. Pl. Mem. 8-14.

It is well-settled that, in analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." McBrayer v. Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983); see also Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998) (citing McBrayer, supra).

In support of his RFC finding, the ALJ relied in part on the opinion of Plaintiff's treating psychiatrist Dr. Cruz-Barrios and her assessment that Plaintiff possessed a Global Assessment of Functioning ("GAF") score of 65. T. 293, 322, 340, 335. The GAF scale indicates the clinician's overall judgment of a person's level of psychological, social, and occupational functioning. The GAF scale ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest. A score of 61-70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." Am. Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders ("DSM") at 34 (Text Revision 4th ed. 2000).[2] The ALJ further noted that Plaintiff's records from the Buffalo Psychiatric Center revealed mild mental impairments/symptoms, citing treatment notes indicating that more often than not, Plaintiff was doing well and that her depression and anxiety were under control. T. 46-47, 307, 321, 323, 355, 358, 361.

---

[2] Plaintiff argues that the ALJ improperly relied on Plaintiff's GAF score, which is no longer used by Volume V of the Diagnostic & Statistical Manual ("DSM"). Pl. Reply Mem. 1-3. Volume IV of the DSM was, however, in effect at the time of Plaintiff's treatment. See Vanterpool v. Colvin, No. 12-CV-8789, 2014 WL 1979925, at *2 n. 2 (S.D.N.Y. May 15, 2014) (citation omitted).

The ALJ also relied upon the findings and opinion of consultative examiner Dr. Santarpia, who opined that Plaintiff was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks within normal limits. She noted that Plaintiff had a mild limitation in performing complex tasks independently, making appropriate decisions; relating adequately with others, and dealing appropriately with stress. T. 30, 326. Dr. Santarpia's opinion is supported by the results of Plaintiff's mental status examination, which was largely unremarkable. T. 325-26. It is also consistent with Dr. Cruz-Barrios' mental status findings that Plaintiff was fully oriented with unimpaired memory, was of average intelligence, and had fair insight and judgment. T. 221, 323, 334.

Contrary to Plaintiff's contention, the ALJ did not substitute his own expertise for that of a physician. See Balsamo, 142 F.3d at 81. Rather, he properly relied upon evidence from Plaintiff's treating providers and the state consultative examiner in his decision-making process. The RFC finding is therefore supported by substantial evidence in the record.

Further, Plaintiff's argument that the ALJ "failed to acknowledge or discuss any symptoms of agoraphobia," is belied by the written opinion. Pl. Reply Mem. (Dkt.#12) 3. The ALJ found that Plaintiff's anxiety with agoraphobia was a severe impairment, cited

treatment notes indicating agoraphobic symptoms, cited the consultative examiner's diagnosis of panic disorder with agoraphobia, and included those symptoms in his second hypothetical to the VE. T. 43, 46, 47, 74.

Plaintiff also contends that the ALJ failed to follow Social Security Ruling ("SSR") 85-15 when he determined that Plaintiff could only work in a moderate-stress environment. Pl. Mem. 14-15.

SSR 85-15 states in pertinent part that "[t]he reaction to the demands of work (stress) is highly individualized . . . impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15, 1985 WL 56857, at *6 (S.S.A. 1985). This Ruling "emphasizes the need to carefully evaluate a claimant's ability to deal with stress in the workplace." Sheffield v. Astrue, No. 11-CV-1176, 2012 WL 5966610, at *2 (N.D.N.Y. Nov.28, 2012) (citing SSR 85-15, 1985 WL 56857, at * 5-6 (1985)).

At the hearing, the ALJ explained that by "moderate" limitation he meant that the limitation was more than slight, but that the individual could still function satisfactorily in a given area. T. 72. In his written decision, the ALJ noted that Dr. Santarpia found that Plaintiff only had a mild impairment in appropriately dealing with stress, and specifically referenced progress reports from Plaintiff's treating psychiatrist, who noted that Plaintiff's anxiety and panic were under control, and assessed

her GAF score at 65. T.46-47. Further, the opinions already discussed support the ALJ's determination that Plaintiff retained the mental capacity for unskilled work. In particular, Dr. Santarpia's opinion noted that Plaintiff could follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, make adequate decisions, and learn new tasks. T. 326. That opinion assessed Plaintiff's prognosis as "fair, given current level of treatment." T. 327. Given Plaintiff's documented abilities, unrestricted activities of daily living, and considering Plaintiff's symptoms of depression and anxiety, the ALJ properly ascribed a moderate-stress limitation.

In light of this evidence, the Court is unpersuaded that remand is necessary for a more extensive discussion of Plaintiff's ability to perform moderate-stress work. Compare Payne v. Astrue, No. 10-cv-1565, 2011 WL 2471288, at *3 (D. Conn. June 21, 2011) (upholding ALJ's finding of "supervised, low stress environment" limitation where evidence did not support more significant cognitive or psychological impairment), with Smith v. Astrue, No. 09-CV-470, 2011 WL 6739509, at *7 (N.D.N.Y. Nov.4, 2011) (ALJ did not make sufficient findings concerning Plaintiff's particularized ability to deal with stress, where the plaintiff was diagnosed with post-traumatic stress disorder, and the consultative examiner opined that she was not likely to maintain a regular

schedule, make appropriate decisions, or appropriately deal with stress).

The ALJ's step four RFC determination is therefore supported by careful consideration of the full administrative record. See Dumas v. Schweiker, 712 F.2d 1545, 1551, 1553 (2d Cir. 1983) (an ALJ determination was supported by substantial evidence where the decision contained "a complete and detailed recitation of the medical records and reports").

**B.   Development of the Record**

Plaintiff avers that the ALJ failed to develop the record when he did not issue a subpoena deces tecum to the VE for production of the materials the VE intended to use to substantiate the number of jobs that existed in a particular vocational area. Pl. Mem. 15-18.

It appears that Plaintiff challenges the ALJ's reliance on the VE's testimony regarding the number of jobs available in the local and national economies on the basis that the VE's testimony lacked foundation and did not satisfy the standard for expert testimony set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). This argument must fail as the Second Circuit has recently noted that the Daubert rule governing admission of expert testimony does not apply in Social Security administrative proceedings, holding that a VE's experience and expertise provide the necessary foundation for his or her testimony. Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 446 n.2, 448-50 (2d Cir. 2012).

Likewise, Plaintiff's reliance on Donahue v. Barnhart, 279 F.3d 441, 446 (7th. Cir 2002) for the proposition that a VE must supply documentation supporting his conclusion during cross-examination, is misplaced. The Brault court explicitly rejected the Donahue approach and reiterated the validity of the "flexible" substantial evidence standard applicable to disability proceedings. Id. at 449.

Plaintiff's counsel not only stipulated to the VE's qualifications, but also cross-examined him on the sources he relied upon. T. 19, 71. In response, the VE stated that he relied upon the information contained in the Occupational Employment Quarterly ("OEQ")[3] from the second quarter of 2010. T. 75. Significantly, Plaintiff's counsel did not object to the VE's testimony. T. 75-76.

Here, the documents requested were unnecessary to the ALJ's ultimate finding the VE's testimony reliable, and his decision to deny the subpoena request prior to the hearing is therefore supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt.#9) is denied, and the Commissioner's

---

[3] Also worth noting is that the Brault court affirmed the district court's holding that it was appropriate for the VE to consult the OEQ in rendering his testimony.  683 F.3d at 447.

cross-motion for judgment on the pleadings (Dkt.#11) is granted.

The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           September 23, 2014